IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MAKIAH K. J., by and through his guardian ad litem, SARAH J.,[1] | Case No. 6:19-cv-00313-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINSTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Makiah J. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title II Disability Insurance Benefits and Title XVI Social Security Income. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case remanded for the immediate payment of benefits beginning January 5, 2016.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in 1994, plaintiff alleges disability beginning November 14, 2014, due to schizophrenia, attention deficit disorder, and bipolar disorder. Tr. 205, 212, 250. On July 2, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-24. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

As an initial matter, the ALJ denoted that plaintiff's date last insured for the purposes of his Title II Disability Insurance Claim was June 30, 2015. Tr. 18.

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Id. At step two, the ALJ determined that plaintiff's "Substance Use Disorder; Schizophrenia; Persistent Depressive Disorder; History of Unspecified Psychotic Disorder, and Attention Deficit Disorder" were medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Id.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [He] has the ability to understand, remember and carry out short, simple, routine job instructions consistent with unskilled work and with a DOT GED reasoning level of 2 or less. He should have only occasiona[l], routine and brief interaction with co-workers and the public. [He] needs a static work environment with few changes in work routine and setting.

Tr. 19.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 22. At step five, the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform despite his impairments, such as laundry worker, industrial cleaner, and salvage laborer. Tr. 23-24.

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) discrediting his subjective symptom testimony; (2) rejecting the lay witness statements of his mother (Sarah J.), aunt (Erika J.), and family friend (Toby W.); and (3) improperly weighing the medical opinions of treating doctor Judy Pinsonneault, D.O., and examining doctor Claudia Lake, Psy.D. Pl.'s Opening Br. 2 (doc. 19). The Commissioner concedes harmful legal error as to all issues raised by plaintiff.[2] Def.'s Resp. Br. 2-5 (doc. 22). Therefore, the sole issue on review is the proper legal remedy.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant

---

[2] Beyond generally asserting that a "remand for a finding of disability [is] the exception," the Commissioner does not proffer any argument related to the content of the record, the issues raised by plaintiff, the ALJ's findings, or the proper legal remedy given the particular facts of this case. Def.'s Resp. Br. 4-5 (doc. 22). Accordingly, the Court infers that the Commissioner agrees with plaintiff's analysis of the issues and only disputes the proper legal remedy on policy grounds. But see Quinnin v. Colvin, 2013 WL 3333026, *5 (D. Or. July 1, 2013) ("the Commissioner asks the Court to remand so the ALJ can have a second chance to evaluate the erroneously discounted evidence [but allowing] the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication") (citation and internal quotations omitted).

Page 3 – OPINION AND ORDER

evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As noted above, it is undisputed that the ALJ neglected to provide legally sufficient reasons, supported by substantial evidence, for discrediting myriad portions of the record. Namely, the ALJ wholly failed to discuss plaintiff's hearing testimony and, by extension, which portions of that testimony are inconsistent with the record. Tr. 20-22; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (a general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible"). Likewise, the ALJ did not assign a particular weight to Dr. Lake's opinion or incorporate her assessed limitations into the RFC, even though, as one of the few mental health specialists who examined plaintiff, her report clearly qualifies as both relevant and probative. This fact is especially problematic given that the ALJ did not fully credit a single medical or lay source. Tr. 20-21; see also Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs").

Moreover, the ALJ did an incomplete job of analyzing the lay and treating medical evidence, merely noting that the former was "questionable" due to bias informed by affection and the latter inconsequential because it included a conclusion regarding plaintiff's disability, which is an issue reserved for the Commissioner. Tr. 20-21; see also Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony"); Schlegel v. Colvin, 2014 WL 1386349, *4 (D. Or. Apr. 9, 2014) (ALJ was free to ignore portion of doctor's opinion stating the claimant "was totally disabled" but

"must [still] address the other parts of the opinion given in medical terms concerning" the claimant's impairments or functioning).

An independent review of the record reveals that virtually all the medical evidence supports plaintiff's and his mother's hearing testimony concerning the extent and severity of his impairments. See, e.g., Tr. 40, 54, 472-76, 500-02; see also Tr. 533 (most recent medical statement from Dr. Pinsonneault reflecting that plaintiff "has a severe behavioral health condition which permanently affects his ability to function in society" and necessitated that his "mother [become] his guardian"). Indeed, even the state agency consulting sources, doctors Ben Kessler, Psy.D., and Winifred Ju, Ph.D., opined as to limitations beyond those articulated in the RFC. See Tr. 90-91 (Dr. Kessler stating in January 2016 that plaintiff can only "consistently carry out and maintain [concentration, persistence, or pace] for simple tasks for normal 2 hour work periods"), 77-78 (Dr. Ju concurring with Dr. Kessler's opinion in August 2016, but further noting that plaintiff "would benefit from vocational guidance setting realistic goals [due to] his limited insight/judgment").

As such, it is unclear from the ALJ's decision how the limited portions of the record specifically discussed warrant the rejection of plaintiff's or his mother's testimony, or the medical opinions of Drs. Pinsonneault and Lake. Stated differently, all three categories of evidence are consistent with each other, in that they support the existence of longstanding and significant mental health issues. The Court cannot discern any other conflicts or ambiguities in the record and does not see any useful purpose in further proceedings. In fact, the Commissioner does not point to a single issue that is unresolved or portion of the record that needs development. Def.'s Resp. Br. 2-5 (doc. 22).

Finally, if the proper legal standards were applied and the wrongfully rejected evidence credited as true, the ALJ would be required to find that plaintiff was disabled. When presented

with hypothetical restrictions compatible with the evaluations of Drs. Pinsonneault and Lake, the vocational expert testified that a "person would be fired for those work behaviors." Tr. 63-65. Additionally, the VE testified that there would be no competitive work for a person who "miss[ed] two or more days per month" due to mental health symptoms. Tr. 62.

However, an issue remains concerning plaintiff's substance abuse that tempers the timeline of his claim. Plaintiff alleges disability as of November 14, 2014, yet the only medical records surrounding this period reflect treatment for drug and alcohol abuse or attention deficit disorder. Tr. 337-69, 419-71, 534-53; see also Tr. 370-415 (evidence from plaintiff's periods of incarceration during 2013 and late 2014/early 2015, during which he sought only routine medical treatment).

The remainder of the record does not evince any mental health treatment until January 5, 2016, when plaintiff presented for a consultative examination with Dr. Lake.[3] Tr. 472-46. Although there was no diagnosis rendered related to schizophrenia or psychosis, Dr. Lake did opine that plaintiff suffered from a "possible schizoaffective disorder" and "may be developing schizophrenia," especially in light of his recent "downward turn" in functioning. Id. As a result, Dr. Lake found that plaintiff "would have difficulty" interacting with coworkers and the public, performing work activities on a consistent basis without special or additional instruction, maintaining regular attendance, completing a regular work week, and dealing with the usual stress encountered in the workplace. Id.

---

[3] The only other medical evidence generated between the alleged onset date and Dr. Lake's assessment are Dr. Pinsonneault's chart notes. Tr. 419-71, 477-87. Dr. Pinsonneault is not a mental health specialist and, beyond infrequent medication management, she was not treating plaintiff's mental health impairments. Id. Notably, the record reflects that plaintiff would present to Dr. Pinsonneault every few months requesting care for temporary physical conditions or medication for his attention deficit disorder. Id. Furthermore, Dr. Pinsonneault's chart notes reflect that plaintiff continued to actively look for work through at least February 2015. Tr. 419, 422, 425.

Page 6 – OPINION AND ORDER

A few weeks after Dr. Lake's assessment, plaintiff was involved in an altercation with police while intoxicated, which resulted in further medical treatment. Tr. 501-08, 512-17, 529-30. Ultimately, plaintiff was given the primary diagnosis of schizophrenia on March 23, 2016. Tr. 501-02. The following day, Dr. Pinsonneault authored a letter stating she had been treating plaintiff since 2009 and that plaintiff's symptoms – including "poor focus" and "severe anxiety around people" – had "progressed," culminating with "the diagnosis of Paranoid Schizophrenia," as confirmed by the "[r]ecent . . . mental health" evaluation. Tr. 500. Due to "this diagnosis and his current condition," Dr. Pinsonneault opined that plaintiff "is permanently disabled from any type of employment." Id.

On April 14, 2016, Dr. Pinsonneault completed paperwork certifying that plaintiff had a "medical hardship" warranting "reside[nce] near a caretaker in order to facilitate proper care." Tr. 330-32. The record before the Court does not reflect that plaintiff has lived independently or functioned without the help and support of family members since that time. There is also undisputed evidence that, after the ALJ's decision, but before the filing of this action in March 2019, plaintiff became incompetent and was, in turn, hospitalized at the Oregon State Hospital. Guardian Ad Litem Pet. 1-2 (doc. 2).

Thus, although plaintiff is certainly entitled to benefits, the Court cannot conclude that the symptoms allegedly preventing plaintiff from working as of the alleged onset date are attributable to plaintiff's disabling mental conditions as opposed to his substance use. Significantly, the 2016 medical opinions of Drs. Lake and Pinsonneault are not retroactive, and plaintiff's and Sarah J.'s

2018 hearing testimony pertained to plaintiff's current functioning.[4] Tr. 33-55. Accordingly, crediting this evidence as true would not dictate an earlier finding of disability.

In sum, the record, as a whole, does not create serious doubt that plaintiff was disabled as of January 5, 2016. Indeed, the Commissioner does not meaningfully address this element and plaintiff applied for benefits more than four years ago; there are no outstanding issues given the VE's testimony and more recent medical evidence demonstrating a precipitous decline in functioning. See Def.'s Resp. Br. 4-5 (doc. 22) (merely arguing that, "although the ALJ did not adequately address some other evidence, the ALJ cited evidence suggesting that during the period at issue plaintiff would be capable of performing simple work tasks"). In light of the timing of plaintiff's substance abuse, periods of incarceration, and mental health assessments and diagnoses, the Court finds that the proper remedy is to remand this case for the immediate payment of benefits as of the date of Dr. Lake's assessment.

---

[4] While not dispositive, the Court notes that plaintiff's and Sarah J.'s hearing testimony presented inconsistent information regarding plaintiff's criminal history and substance use. Specifically, plaintiff affirmatively denied any methamphetamine or marijuana usage for the past three years (i.e., dating back until 2015), and also stated that he only smoked methamphetamine once and had no problems with alcohol. Tr. 38-39, 44-46. Sarah J. initially testified that plaintiff had been clean for three years, but then acknowledged that she had seen plaintiff smoking marijuana "a couple of months" ago and that he had been intoxicated in January 2016; however, she denied any legal problems since 2013. Tr. 48-52. The record reflects daily marijuana usage at least through February 2016; although plaintiff contemplated getting a medical marijuana card, there is no indication that one was ever obtained. Tr.477-87. In addition, the record demonstrates long-standing usage of methamphetamine, marijuana, alcohol, and opiates, and that plaintiff's substance abuse led to problems with the law, including, but not limited to, serving time in jail on-and-off from 2013 through 2015. See, e.g., Tr. 337-69, 370-415, 534-53.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for the immediate payment of benefits beginning January 5, 2016.

IT IS SO ORDERED.

DATED this 5th day of February, 2020.

                                    /s/ Jolie A. Russo
                                    Jolie A. Russo
                              United States Magistrate Judge